EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Heidi Scherrer Caillet-Bois<br>    Jueza Superior<br>    Tribunal de Primera Instancia<br>    Sala Superior de Bayamón | 2004 TSPR 151<br><br>162 DPR ___ |

Número del Caso: AD-2001-5
                 AD-2001-6
                 AD-2001-7

Fecha: 21 de septiembre de 2004

Oficina de Administración de los Tribunales:

                    Lcda. Ivonne Díaz Pérez
                    Lcdo. Osvaldo Cartagena Sánchez
                    Lcdo. Teddy Rodríguez Pérez
                    Lcdo. Alcides Oquendo Solís
                    Oficina de Asuntos Legales

Abogados de la Parte Querellada:

                    Lcdo. Ramón A. Nevárez Andino
                    Lcdo. Ramón M. Negrón Colón
                    Lcdo. Ricardo E. Carrillo Delgado

Materia: Conducta Profesional
        (La suspensión será efectiva una vez advenga final y firme la
        Sentencia, conforme la Regla 45 del Reglamento del Tribunal
        Supremo sobre reconsideración.)

  Este documento constituye un documento oficial del Tribunal Supremo
  que está sujeto a los cambios y correcciones del proceso de
  compilación y publicación oficial de las decisiones del Tribunal.
  Su distribución electrónica se hace como un servicio público a la
  comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

| | | |
|---|---|---|
| Heidi Scherrer Caillet-Bois | AD-2001-5 | Conducta |
| Jueza Superior | AD-2001-6 | Profesional |
| Tribunal de Primera Instancia | AD-2001-7 | |
| Sala Superior de Bayamón | | |

PER CURIAM

San Juan, Puerto Rico, a 21 de septiembre de 2004.

I

La Lcda. Heidi Scherrer Caillet-Bois (en adelante, "la querellada" o "Lcda. Scherrer") fue admitida al ejercicio de la abogacía el 15 de enero de 1991. En el año 1996, fue nominada por el Gobernador de Puerto Rico para ocupar el puesto de Juez Municipal, siendo confirmada por el Senado el 11 de julio de 1996. Posteriormente, el 16 de febrero de 1999, la Lcda. Scherrer fue confirmada por ese cuerpo legislativo para ocupar el cargo de Juez Superior, luego de su nominación en ascenso para ese cargo por el Gobernador.

El caso de marras trata sobre tres querellas presentadas por la Oficina de Administración de Tribunales (en adelante, "OAT") contra la referida abogada, por hechos ocurridos mientras fungió como Juez Superior. La susodicha se desempeñó en ese puesto hasta el 12 de febrero de 2003, fecha en la que renunció a su cargo mientras estaba pendiente la investigación que se llevaba en su contra por los hechos que dieron lugar a las controversias que hoy nos ocupan.

La tres querellas que hoy adjudicamos versan sobre hechos independientes y separados. Sin embargo, éstas fueron presentadas simultáneamente por la OAT el 7 de noviembre de 2001. Tras celebrar las vistas de rigor, el 13 de noviembre de 2003, la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal del Circuito de Apelaciones (en adelante, "Comisión de Disciplina de Jueces"), emitió su informe sobre las querellas. Veamos los hechos que dieron lugar a cada controversia, según determinados por la referida Comisión.

II

A. Caso Núm. AD–2001–5

El 23 de enero de 2001, la Lcda. Scherrer— entonces Juez de Primera Instancia en la Sala Superior de Bayamón— presidió una vista preliminar que se celebró en el caso de *Pueblo v. Jesús M. Torres Paul*, V.P. Núm. 2000-10194. El acusado en ese caso, a quien se le imputaba una

infracción al Artículo 401 de la Ley de Sustancias Controladas, estuvo representado por la Lcda. Carmen Maritza Luna Padilla (en adelante, "Lcda. Luna Padilla").[1] Para esta fecha, la Lcda. Luna Padilla llevaba seis años laborando para la Sociedad para Asistencia Legal (en adelante, "SAL").

En la referida vista preliminar, la Lcda. Luna Padilla contrainterrogó al agente Juan Amaro García sobre la existencia de un rótulo de "PARE" en una intersección vial. Mientras que el agente declarante insistía en la inexistencia del rótulo en cuestión, la línea de preguntas de la Lcda. Luna Padilla tenía el propósito de demostrar lo contrario. Más aún, la abogada alegó ante el tribunal que había ido personalmente a la referida intersección y corroborado la existencia del rótulo.[2]

Ante la controversia suscitada, la entonces Juez Scherrer informó en corte abierta que acudiría al lugar en controversia, por lo que se reservaba el fallo para el día siguiente. A su vez, le advirtió tanto a la Lcda. Luna Padilla como al agente Amaro Sierra que si habían inducido a error al tribunal tendría consecuencias para ellos.

---

[1] El Ministerio Público estuvo representado por los fiscales Juan M. Tirado y María S. Castillo Fuertes.

[2] *Véase* Informe de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal del Circuito de Apelaciones, a las págs. 5-6.

Al día siguiente, el 24 de enero de 2001, la entonces Juez Scherrer llamó nuevamente el caso de *Pueblo v. Torres Paul*, *supra*. Al comenzar los trabajos, la querellada se dirigió a la Lcda. Luna Padilla en voz alta y desapaciblemente— reflejando en sus expresiones corporales que estaba muy molesta— y le informó a la abogada que se había personado a la intersección en controversia y que no encontró rótulo de "PARE" alguno, por lo que le adjudicó haber inducido a error al tribunal. Además, le expresó a la Lcda. Luna Padilla que era un mentirosa. Al momento de dichas expresiones la sala estaba muy congestionada de público, abogados y varios fiscales.

Con miras a defenderse de las imputaciones, la Lcda. Luna Padilla solicitó autorización para mostrarle a la querellada unas fotos tomadas en el área en controversia, pero esta última rehusó discutir la solicitud y dio el caso por sometido. La Lcda. Luna Padilla, quien se mostraba muy nerviosa y llorosa, optó por regresar a su mesa. Mientras se dirigía en esa dirección, de espalda al estrado, la Lcda. Luna expresó en voz baja "que abusadora", y acto seguido, salió de sala. Durante el transcurso del comentario en voz baja y la posterior salida de sala, la querellada continuó con los trabajos con normalidad. ***La Comisión de Disciplina de Jueces concluyó sobre este particular que, dado el tono de voz***

*empleado, y la posición y distancia del estrado, la*
*querellada no pudo escuchar lo comentado por la abogada.*

Luego de haber atendido otros casos, la querellada decretó un receso e hizo llamar a su oficina a los fiscales María S. Castillo y Juan M. Tirado. Sin embargo, para dicha reunión no llamó ni citó a la Lcda. Luna Padilla. Al inquirirle a los fiscales sobre el suceso con la Lcda. Luna, ellos le explicaron a la querellada que su percepción fue que ésta expresó en voz baja "que cabrona".[3]

Varias horas después de la reunión con los fiscales, la querellada emitió una orden de desacato sumario en contra de la Lcda. Luna Padilla, imponiéndole una multa de quinientos dólares ($500.00) o un día de cárcel por cada cincuenta dólares ($50.00) que dejase de pagar. Dicha orden se le notificó a la Lcda. Luna Padilla el 25 de enero de 2001. Ese mismo día, ésta presentó un recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones (en adelante, "TCA"), en el cual solicitó la imposición de una fianza en apelación y que se revocara la orden de desacato impuesta por la querellada.[4] También en esa fecha, la Lcda. Luna Padilla

---

[3] *Id.*, a la pág. 7.

[4] El Tribunal fijó fianza en apelación el día en que se presentó el recurso. Posteriormente, el 27 de agosto de 2001, el TCA revocó la sentencia impuesta por la querellada. *Véase Pueblo v. Luna Padilla*, Caso Núm. KLAN0100090. Dicho foro resolvió que, como cuestión de derecho, no procedía la imposición del "extraordinario desacato sumario."

presentó ante la OAT una queja en contra de la entonces Juez Scherrer.

El 17 de julio de 2001, la OAT presentó a la consideración de la Comisión de Disciplina de Jueces un informe de investigación relacionado con la queja presentada en contra de la Lcda. Scherrer. La presidenta de la Comisión, Hon. Aida N. Molinary de la Cruz, designó al Comisionado Asociado, Lcdo. Flavio E. Cumpiano Villamor, para que determinase causa a tenor de la Regla 18 de las *Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones*, 4 L.P.R.A., Ap. XV-A, R.18. El 31 de agosto de 2001, el Comisionado Cumpiano Villamor estableció la existencia de causa probable ante posibles violaciones a varias disposiciones de los Cánones de Ética Judicial. El Comisionado no recomendó la imposición de medidas provisionales.

El 6 de noviembre de 2001, la OAT presentó una querella mediante la cual se le formularon a la Lcda. Scherrer los siguientes cargos:

1) La Querellada incurrió en conducta impropia incompatible con su cargo al mancillar públicamente la reputación de la Lcda. Carmen Maritza Luna Padilla llamándola mentirosa y al utilizar otros epítetos, basándose en los hallazgos de una inspección ocular que realizó en ausencia de las partes en un caso criminal pendiente en su sala. Al observar esta conducta la Querellada violó igualmente los más elementales derechos de las partes, según contemplados en las Reglas 11, 12 y 8.1 [sic] de

Evidencia y la Regla 134 de las de Procedimiento Criminal. Asimismo, voluntariamente infringió los Cánones I, II, XVI y XVII de Ética Judicial, 4 L.P.R.A. Ap. IV-A, así como el derecho al debido proceso de ley que asiste a todo imputado de delito.

2)   La Querellada incurrió en conducta impropia incompatible con su cargo al imponerle un descato criminal sumario en ausencia a la Lcda. Carmen Maritza Luna Padilla, horas después de haberse dispuesto del caso en que se produjeron los incidentes en que se basó el desacato. Esta actuación de la Querellada viola los Cánones I, II, XV, XVIII y XXVI de Ética Judicial, supra.

3)   La Querellada incurrió en conducta impropia incompatible con su cargo al abusar de su poder e imponer una multa por desacato a la Lcda. Carmen Maritza Luna Padilla basándose en comunicaciones privadas vertidas por la fiscal María Soledad Castillo Fuertes en ausencia de la licenciada Luna Padilla, en abierta violación de los Cánones I, II, XVIII y XXVI de Ética Judicial, supra.

Como sanción por los cargos imputados, la OAT solicitó la destitución de la juez. La Comisión de Disciplina de Jueces celebró vistas para este caso los días 3 y 4 de diciembre de 2002.

**B. Caso Núm. AD-2001-6**

El 6 de octubre de 2000, la querellada y su esposo, el señor Manuel Rivera González, acudieron al complejo residencial Costa Mar Apartments, ubicado en el municipio de Loíza. Ese día, la querellada decidió separar el apartamento 301 del Edificio D (301D) del referido complejo, para lo que entregó un cheque por la cantidad de $1,500.00 y firmó un documento titulado "Contrato de

Compraventa de Propiedad Horizontal."[5]  Esta transacción la realizó con el señor Alfonso Rodríguez Ramírez (en adelante, "señor Rodríguez Ramírez"), dueño de la compañía *River Stone*, y desarrollador del proyecto Costa Mar Apartments.

El 9 de octubre de 2000, la querellada y su esposo regresaron al complejo Costa Mar y realizaron una transacción mediante la cual opcionaron el apartamento 303 del Edificio B (303B) y desistieron del separado el 6 de octubre de 2000.[6]  Éstos tomaron esa decisión luego de conversar y negociar con el señor Rodríguez Ramírez sobre la conveniencia del apartamento 303B, ya que éste, distinto al 301D, estaba terminado de construir y listo para entregar.  Mediante la referida negociación, se estipuló una opción de $2,500.00 y un precio de $127,000.00.  ***Surge del expediente que durante la negociación entre la querellada y el señor Rodríguez Ramírez, la primera afirmó que era "presidenta de los jueces" y que "podía conseguirle otros jueces compradores."***[7]  El mismo 9 de octubre de 2000,[8] la

---

[5]  El precio de la unidad separada era de $142,000.00. *Véase* Informe de la Comisión de Disciplina de Jueces, a la pág. 18.

[6]  Tal transacción se realizó mediante la firma de otro "Contrato de Compraventa de Propiedad Horizontal."

[7]  *Véase* Informe de la Comisión de Disciplina de Jueces, a la pág. 18.

[8]  En el contrato suscrito se intercambiaron varias páginas del documento firmado el 6 de octubre de 2001,

continúa...

... [8] continuación

querellada solicitó que le entregaran las llaves del apartamento opcionado para arreglarlo y pintarlo. El señor Rodríguez Ramírez le explicó a la Comisión de Disciplina de Jueces que accedió a esa solicitud porque tomó en cuenta que "los jueces son decentes."[9]

Según concluyó la Comisión de Disciplina de Jueces, la querellada y su esposo comenzaron a visitar el apartamento a partir del fin de semana posterior a que se le entregaran las llaves del inmueble. Tras varios fines de semana de que se le entregaran las llaves a la querellada, el señor Rodríguez Ramírez comenzó a reclamarle al esposo de ésta para que firmaran la escritura de compraventa. La querellada y su esposo se negaron a ello alegando ciertos desperfectos en la instalación de las lozas del apartamento. A pesar de que posteriormente el alegado defecto fue reparado, la querellada y su esposo no estuvieron satisfechos con el trabajo realizado, por lo que se reiteraron en su negativa de firmar la escritura. La Comisión de Disciplina de Jueces concluyó que la querellada ocupó el apartamento 303B aproximadamente desde el 13 de octubre de 2000 hasta el 29 de marzo de 2001, sin realizar pago alguno por su uso y disfrute.

---

razón por la cual el nuevo acuerdo aparece firmado el día 6 de octubre 2000, en vez de el 9 de octubre de 2000.

[9] *Véase* Informe de la Comisión de Disciplina de Jueces, a la pág. 18.

De otra parte, surge de autos que en el complejo Costa Mar Apartments era común la utilización de tomas de energía eléctrica no autorizadas por parte de los constructores del proyecto. Al principio, la Autoridad de Energía Eléctrica (en adelante, "AEE") no tomó acción alguna contra dicha práctica por entender que se trataba de tomas de muy corta duración realizadas para probar la adecuacidad del suministro de energía en la nueva construcción y sus áreas comunes. Subsiguientemente, la AEE decidió instalar tapas de cristal y contadores "dummy" para evitar que ello siguiera ocurriendo. La Comisión de Disciplina de Jueces concluyó en su Informe que la querellada se benefició del servicio no autorizado de energía eléctrica en el apartamento 303B— a sabiendas de su ilegalidad— aproximadamente desde el 13 de octubre de 2000 hasta el 27 de diciembre de 2000. La Comisión también concluyó que la querellada recibió el servicio de agua potable no autorizada por la Autoridad de Acueductos aproximadamente desde 13 de octubre de 2000 hasta 9 de febrero de 2001.

Por lo hechos antes expuestos, el señor Rodríguez Ramírez presentó una queja en contra de la Lcda. Scherrer ante este Tribunal,[10] la cual fue referida a la OAT el 31

---

[10] El señor Rodríguez Ramírez también presentó una demanda de desahucio contra la querellada y su esposo. La querellada ripostó promoviendo una acción criminal en contra del hijo del señor Rodríguez Ramírez, por alegadamente haberse apropiado ilegalmente de cincuenta dólares ($50.00) propiedad de la querellada mientras continúa...

de enero de 2001. El 4 de septiembre de 2001, el Comisionado Asociado, Lcdo. Flavio Cumpiano Villamor, determinó causa para proseguir el trámite correspondiente. Tampoco recomendó la imposición de medidas disciplinarias provisionales.

El 6 de noviembre de 2001, la OAT presentó una querella en contra de la Lcda. Scherrer, en la cual se le imputaron los siguientes cargos:

1. La Querellada, Hon. Heidi Scherrer Caillet-Bois incurrió en conducta impropia incompatible con el desempeño de su cargo como Juez, consistente en que conjuntamente con su esposo otorgó un contrato de promesa de compraventa de un bien inmueble y pese a que no obtuvo derecho al título o dominio sobre esa propiedad, realizó actos de dominio consistentes en que utilizó y disfrutó de dicho bien inmueble por un período de al menos cinco (5) meses sin autorización del dueño y sin realizar pago adicional alguno al depositado originalmente. La querellada, en adición, utilizó y/o instaló servicios de agua y energía eléctrica en el inmueble aludido sin autorización del dueño y sin tener derecho a ello por lo que sus acciones conformaron un esquema de enriquecimiento injusto violatorio de los Cánones I y XXI de los de Ética Judicial.

2. La Querellada, Hon. Heidi Scherrer Caillet-Bois incurrió en conducta

---

... 10 continuación

coordinaba el arreglo de las lozas del apartamento 303B. Las partes desistieron de ambos pleitos tras acordar firmar la escritura de compraventa y de que se efectuara el pago correspondiente. El 30 de marzo de 2001, el señor Rodríguez Ramírez dirigió una carta al Juez Presidente del Tribunal Supremo informándole que no tenía interés en que se prosiguiera la queja instada contra la querellada. *Véase* Informe de la Comisión de Disciplina de Jueces, a la pág. 21.

impropia incompatible con su cargo, consistente en que recomendó y promocionó entre diversas personas la compra de apartamentos en el Condominio Costa Mar donde ella había otorgado un contrato de promesa de compraventa de un apartamento con un descuento de $15,000.00. El beneficio económico obtenido por la Querellada emanó de la utilización de su cargo por lo que violó los Cánones I y XXI de los de Ética Judicial.

3. La Querellada, Hon. Heidi Scherrer Caillet-Bois incurrió en conducta impropia incompatible con su cargo consistente en que en abierta violación a su deber de mantener silencio y circunspección tras presentarse esta queja, discutió públicamente el asunto y elaboró una versión acomodaticia y falsa de los eventos envueltos en dicha queja violando, por ende, la Regla 13 B incisos (4) y (5) de las de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones.

Por lo cargos que anteceden, la OAT recomendó que la querellada fuera destituida como juez. La Comisión de Disciplina de Jueces celebró vistas para el caso los días 5, 6 y 12 de febrero de 2003.

## C. Caso Núm. AD-2001-7

El 27 de marzo de 2000, la querellada presidió la vista preliminar que se celebró en el caso *Pueblo v. Enrique González Calderón*, V.P. Núm. 2000-2116. A dicha vista, el acusado compareció sin representación legal. Sin embargo, al inquirirle la querellada sobre quién era su abogado, el imputado contestó que lo representaba el Lcdo. Julio Gil de Lamadrid, pero que éste no podía estar

presente porque tenía una vista en el Tribunal Federal. La querellada expresó que "esa no es una forma de comparecer" y, en corte abierta, repautó la vista preliminar para el 27 de abril de 2000. En la hoja de incidencias de la vista preliminar, la querellada indicó que el acusado estaba representado por el Lcdo. Gil de Lamadrid y que no estuvo preparado para la vista.

Posteriormente, el 25 de abril de 2000, el acusado González Calderón visitó la oficina del Lcdo. Gil de Lamadrid, con el propósito de contratar los servicios de éste. Dicho abogado rehusó asumir la representación legal del señor González Calderón ya que para la fecha en que se celebraría la vista preliminar iba a estar fuera de Puerto Rico. Además, indicó que el acusado le adeudaba honorarios por servicios prestados en un caso anterior.

Así las cosas, el 27 de abril de 2000, la querellada llamó el caso del señor González Calderón para vista preliminar. La entonces juez Scherrer le preguntó nuevamente al acusado por su abogado, y éste contestó que no pudo comparecer "porque tenía que estar en Estados Unidos resolviendo unos problemas personales." La querellada reaccionó a la información ofrecida de manera similar a la ocasión anterior, y manifestó que "esa no era manera de excusarse." Entonces, emitió una orden de desacato en contra del Lcdo. Gil de Lamadrid, ordenó su arresto y fijó una fianza de quinientos dólares

($500.00). Además, señaló el caso para el 11 de mayo de 2000, y extendió la citación en corte abierta al imputado, al fiscal y a los agentes policíacos presentes.

Tras un intento de diligenciamiento en su oficina mientras se encontraba fuera de Puerto Rico, el Lcdo. Gil de Lamadrid se enteró de la orden de desacato y arresto emitida en su contra. Mediante moción de 8 de mayo de 2000, éste le informó a la querellada que él no era abogado del acusado, que la orden de arresto era "ilegal, impropia y antiética", y que estaba disponible para representar al imputado si se le abonaba cierta cantidad de dinero por la deuda de honorarios pendientes. Así pues, tras indicar que comparecería a la vista señalada para el 11 de mayo de 2000, solicitó que se dejara sin efecto la orden de arresto emitida en su contra, y la inhibición de la querellada en la vista de desacato.

El 10 de mayo de 2000, la querellada emitió una orden denegando la moción presentada por el Lcdo. Gil de Lamadrid. La querellada añadió que "el expediente habla por si solo," y refirió el asunto de la inhibición al Juez Administrador.

El 11 de mayo de 2000, el Lcdo. Gil de Lamadrid compareció al tribunal según fue citado. Allí le reiteró a la querellada que él no era abogado del señor González Calderón, y le solicitó que reconsiderara su orden de desacato y arresto. Dado que en sala se encontraban varias de las personas que estuvieron presentes en la

vista de 27 de marzo de 2000 (el imputado, los fiscales y los agentes del orden público) el Lcdo. Gil de Lamadrid solicitó a la querellada que le preguntara a éstos sobre su recuerdo de lo acaecido en esa fecha, y que inspeccionara las notas que se tomaron ese día. La querellada respondió a dicha solicitud expresando que ella le creía más a sus notas que a las de los fiscales o policías, y que no estaba loca al haber hecho la anotación que hizo al expediente. Acto seguido, le expresó al Lcdo. Gil de Lamadrid que "quien me dice antiética en mi sala, tiene sus consecuencias", y le ordenó a asumir la representación legal del señor González Calderón. El abogado acató la orden y, tras reunirse con el ministerio público, negoció una alegación pre-acordada por un delito menos grave.

Resuelto ese asunto, la querellada procedió a llamar el caso de desacato. La entonces Juez Scherrer aceptó la solicitud de inhibición que le dirigiera el Lcdo. Gil de Lamadrid. No obstante, antes aprovechó para denegar la petición para que se dejara sin efecto la fijación de fianza, y ordenó al alguacil a diligenciar la orden de arresto que pesaba en contra del abogado. De conformidad, el Lcdo. Gil de Lamadrid fue puesto bajo arresto y, aunque no fue esposado, se le condujo a la Sala de Investigaciones por el ascensor que ordinariamente es utilizado para transportar a los confinados. Posteriormente, el abogado compareció ante

el Juez Roger Ferrán, y prestó la fianza que le fue impuesta.

El 7 de junio de 2000, el Juez Heriberto Sepúlveda vio el caso de desacato en contra del Lcdo. Gil de Lamadrid. Luego de escuchar la prueba testifical ofrecida por el señor González Calderón y los agentes policíacos, el Juez Sepúlveda absolvió al abogado del delito imputado.

El 2 de febrero de 2001, el Lcdo. Gil de Lamadrid presentó ante la OAT una queja juramentada en contra de la Lcda. Scherrer. Tras los trámites de rigor, el 31 de agosto de 2000, el Lcdo. Flavio Cumpiano Villamor, Comisionado Asociado, determinó causa probable para iniciar un procedimiento disciplinario. No recomendó la imposición de medidas disciplinarias provisionales. El 6 de noviembre de 2001, la OAT presentó una querella en la cual le imputó a la Lcda. Scherrer los siguientes cargos:

1. La Querellada incurrió en conducta impropia incompatible con su cargo, consistente en asumir e insistir, sin disponer de elementos y evidencia suficiente, denotando además obstinación reñida con el cargo que ocupa, que el abogado Julio Gil de Lamadrid era el representante legal del imputado Enrique González Calderón. La Querellada ha insistido en mantener su actitud obstinada, aun en presencia de abundante evidencia documental y testifical que demuestra lo contrario.

   La conducta descrita constituye una violación al Canon I de los *Cánones de Ética Judicial*, 4 LPRA, Ap. XIX [sic], que entre otras, impone a todo juez la obligación de mantener los más altos niveles de responsabilidad pública para no lesionar la confianza del pueblo en que los tribunales son el vehículo

indicado para hacer y obtener justicia. Asimismo el Canon I exige a todo juez velar que en el ejercicio de la delicada función de impartir justicia sus actuaciones respondan a normas de conducta que honren la integridad de su ministerio y estimulen el respeto y la confianza en la judicatura.

2.     La Querellada, Hon. Heidi Scherrer Caillet-Bois incurrió en conducta impropia y negligente, incompatible con su cargo, consistente en que al no ejercer las funciones de su cargo con la imparcialidad que éste requiere y dejándose llevar por la obstinación y por sus emociones, reñidas con el cargo que ocupa, incurrió en actuaciones que constituyen un ejercicio indebido del poder y la autoridad judicial que innecesariamente condujeron al arresto y procesamiento de una causa de desacato contra el Lcdo. Julio Gil de Lamadrid.

La conducta antes descrita constituye una violación al Canon I de Ética Judicial, por lo que se recoge e incorpora a éste la argumentación anterior. Asimismo, constituye una violación de los Cánones I, II, XVI, XVII y XXVI de Ética Judicial, por cuanto éstos requieren al juez prudencia, serenidad, imparcialidad y diligencia en el empeño de descubrir los hechos esenciales de cada controversia y resolver ésta a base de la evaluación de la prueba presentada.

3.     La Querellada, incurrió en conducta impropia incompatible con su cargo, consistente en que el día 27 de abril de 2000, a pesar de que el Lcdo. Julio Gil de Lamadrid presentó evidencia de que nunca había comparecido en representación del señor Enrique González Calderón, imputado en el caso VP-2116, utilizó su poder para obligarlo a presentar como abogado de oficio al señor González Calderón, en evidente desprecio de los testimonios de los testigos de cargo que corroboraban las alegaciones del abogado. Al exhibir esta conducta, la Querellada, conciente y voluntariamente violó el *Reglamento para la Asignación de Abogados de Oficio en Procedimientos de Naturaleza Penal*, así como los Cánones I, II, XVI, XVII y XXVI de Ética Judicial.

Por los cargos que anteceden la OAT solicitó como sanción la destitución de la querellada del cargo de juez. La vista evidenciaria se celebró el 4 de diciembre de 2002.

El 12 de febrero de 2003, mientras se celebraban vistas para el caso AD-2001-6, la querellada informó a la Comisión de Disciplina de Jueces que había decidido renunciar a su posición como Juez del Tribunal de Primera Instancia. La referida Comisión le advirtió a la Lcda. Scherrer que, conforme a las normas aplicables, su renuncia al cargo no le privaba de su jurisdicción para continuar con el proceso disciplinario en su contra.

El 13 de noviembre de 2003, la Comisión de Disciplina de Jueces emitió un Informe en el cual recoge sus hallazgos sobre las tres querellas. En el mismo concluye que la Lcda. Scherrer incurrió en conducta impropia en su desempeño como juez y en sus actuaciones privadas, por lo que procede la imposición de sanciones. Estamos de acuerdo.

### III

A la querellada se le imputan tres cargos en cada una de las tres querellas presentadas, para un total de nueve cargos. Éstos implican diferentes violaciones a los Cánones de Ética Judicial, a saber: ocho cargos por alegada violación al Canon I, dos a los Cánones XV, XVIII y XXI, tres a los Cánones XVI y XVII, cuatro al Canon XXVI, y cinco al Canon II. Además, hay un cargo por

alegada violación a las *Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones*, *supra*, y con el *Reglamento para Designar Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal*. 4 L.P.R.A., Ap. XXVIII. Asimismo, mediante una moción presentada por la OAT el 31 de marzo de 2003, se le notificó a la querellada que su conducta también violaba los Cánones 15, 29 y 38 de Ética Profesional.

En vista de que la querellada renunció a su posición de Juez de Primera Instancia mientras aún se dilucidaban estos cargos, debemos evaluar nuestra jurisdicción para disciplinarla por sus acciones mientras se desempeñaba en esa capacidad.

IV

La jurisdicción disciplinaria del Tribunal Supremo de Puerto Rico sobre los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones emana del Artículo V, sección 11, de la Constitución de Puerto Rico.[11] Bajo el palio de ese mandato constitucional, este Tribunal aprobó los Cánones de Ética Judicial, los cuales pautan las normas mínimas de conducta que todo juez debe

---

[11] **Sección 11. Destitución de los jueces.**

Los jueces del Tribunal Supremo podrán ser destituidos por las causas y mediante el procedimiento que esta Constitución establece en la sección 21 del Artículo III. Los jueces de los demás tribunales podrán ser destituidos por el Tribunal Supremo por las causas y mediante el procedimiento que se disponga por ley.

observar rigurosamente.  4 L.P.R.A., Ap. IV-A, C. XXVI; *In re Cruz Aponte*, res. el 7 de abril de 2003, 159 D.P.R. ___ (2003), 2003 T.S.P.R. 51, 2003 J.T.S. 52.  Asimismo, mediante la aprobación de las *Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones*, *supra*, delineamos el esquema procesal bajo el cual se tramitan los asuntos disciplinarios instados en contra de miembros de la judicatura.

A pesar de que los Cánones de Ética Judicial están dirigidos a reglamentar la conducta de aquellos abogados que se desempeñan como jueces, hemos resuelto que la renuncia de un(a) querellado(a) a su posición en la judicatura, o la expiración del término de su nombramiento, no es óbice para que este Tribunal pase juicio sobre aquellas acciones en que éste(a) incurrió mientras fungió como magistrado(a) y que enmarquen violaciones a dichas normas de comportamiento.  *In re Suárez Marchán*, res. el 30 de junio de 2003, 159 D.P.R.___ (2003), 2003 T.S.P.R. 115, 12, 2003 J.T.S. 117; *In re Campoamor Redín*, 150 D.P.R. 138 (2000).  Ello es así toda vez que, determinar lo contrario atentaría contra el propósito social de evitar que la justicia se vea frustrada al tornarse académica una querella por el solo hecho de que un juez cese en su cargo.  Además, sería incompatible con nuestra facultad inherente para

reglamentar el ejercicio de la abogacía. *In re Suárez Marchán*, *supra*; *In re Campoamor Redín*, *supra*. En consecuencia, resolvemos que la renuncia de la Lcda. Scherrer al puesto de Juez de Primera Instancia no privó a este Tribunal de su autoridad para pasar juicio sobre sus actuaciones mientras fungió como miembro de la judicatura puertorriqueña. Por tanto, procedemos a esbozar el estado de derecho vigente en relación con los cargos imputados.

V

El Canon I de Ética Judicial,[12] establece un precepto amplio y general que requiere de todos los jueces honestidad e imparcialidad, para que así se estimule la confianza de la ciudadanía en la Rama Judicial. Sobre dicho deber, hemos expresado que no basta con tener las referidas cualidades, sino que las mismas deben exhibirse tanto en la vida pública como en la privada. *In re Cruz*

---

[12] **Canon I**

La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

*Aponte*, *supra*, a la pág. 7. Al mismo tenor, el Canon II[13] establece que aunque la figura del juez está revestida de autoridad, ésta no debe utilizarse indebidamente dentro o fuera del tribunal. El propósito que orienta a dicho mandato es evitar que un juez tome decisiones ensoberbecido por el poder. *Id.*, a la pág. 8.

Por su parte, el Canon XV establece que el Juez no debe celebrar entrevistas privadas con las partes o sus abogadas o abogados, ni permitir comunicaciones o argumentos de los mismos que pretendan influir su actuación judicial en asuntos de su competencia, o bajo su consideración, cuando los otros intereses que puedan ser afectados no estén representados ante él o ella.[14] Este mandato promueve que los jueces mantengan una imagen de imparcialidad, ya que un simple acercamiento puede tener como consecuencia que la parte perdidosa en el

---

[13] **Canon II**

Para el cabal desempeño de sus funciones, **la Jueza o el Juez debe ser laborioso, prudente, sereno, imparcial y cuidadoso** en la interpretación de la ley, estar consagrado al estudio del Derecho y ser diligente en el empeño de descubrir los hechos esenciales de cada controversia.

En el cumplimiento de este deber, la Jueza o el Juez resolverá cada controversia a base de su propia evaluación de la prueba presentada. En cualquier asunto sometido a su consideración, podrá, cuando a su juicio lo requieran los fines de la justicia, solicitar de las partes proyectos de sentencias, resoluciones u órdenes (énfasis suplido).

[14] El Canon XV establece el contacto *ex parte* en casos no contenciosos como excepción a este mandato. Ahora bien, aclara que incluso en esos casos el juez deberá conducirse de manera cautelosa.

pleito justifique el triunfo de la parte contraria en la parcialidad del magistrado que atendió el caso. *In re Suaréz Marchán*, *supra*, a la pág. 16.

El Canon XVI[15], a su vez, requiere que el juez, al llevar a cabo el ejercicio de sus funciones, **dicte cátedra de respeto a la dignidad del ser humano mediante el trato cortés a todas las personas que ante él o ella comparezcan.** *In re Cruz Aponte*, *supra*, a la pág. 8. Asimismo, el Canon XVII[16] propugna que el juez está

---

[15] **Canon XVI**

La Jueza o el Juez debe ser considerado y respetuoso con los abogados y las abogadas, especialmente con aquellas personas que comienzan a ejercer la profesión. Ha de serlo también con los o las testigos, jurados, funcionarios o funcionarias del tribunal y todos los que comparezcan ante él o ella. Sin embargo, debe evitar atenciones desmedidas hacia estas personas. Velará, además, por que los abogados y las abogadas y los otros funcionarios o funcionarias o empleados o empleadas del tribunal bajo su dirección mantengan igual conducta.

[16] **Canon XVII**

El Juez o la Jueza dirigirá los trabajos del tribunal con orden y decoro y estará alerta contra todo proceder que pueda afectar la dignidad y el respeto debidos al tribunal. Intervendrá para impedir cualquier conducta impropia de las partes, los abogados y las abogadas o cualquier otra persona, y tomará la acción que en su discreción proceda de acuerdo con la ley, los cánones de ética profesional y las mejores tradiciones del sistema judicial.

En el curso de los procedimientos judiciales, el Juez o la Jueza mantendrá su actitud general, sus manifestaciones y el tono de su voz dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco hará comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios,

continúa...

obligado a mantener el orden y el decoro en el tribunal a través de su propia conducta. De conformidad con este mandato, hemos indicado que los magistrados pueden utilizar el desacato *como última alternativa* para vindicar la dignidad del tribunal, *ya que el uso indiscriminado de dicho instrumento equivaldría a una falta de temperamento judicial*. *Id.*, a la pág. 9. Igualmente, el Canon XVIII[17] reitera que el juez debe conducir sus trabajos en un ambiente de solemnidad y respeto, por lo que no debe permitir la toma de fotografías y grabaciones en sala, salvo en ocasiones estrictamente ceremoniales. Según el referido canon, la toma de fotografías o películas en el salón de sesiones

_____

... [16] continuación

expresiones o gestos que envuelvan burla o mofa; ni ridiculizará de modo alguno a los abogados o las abogadas, las partes, los o las testigos, funcionarios o funcionarias del tribunal o a otras personas que a él o ella acudan.

Cuando sea necesario, el Juez o la Jueza podrá elogiar o censurar la conducta de los abogados y las abogadas pero, hasta donde sea posible, deberá hacerlo desde el estrado o en sus resoluciones o sentencias y siempre con la debida moderación y ecuanimidad.

[17] **Canon XVIII**

El Juez o la Jueza ha de mantener el proceso judicial en un ambiente de solemnidad y respeto. El tomar fotografías o películas en el salón del tribunal durante la celebración de sesiones judiciales o recesos entre dichas sesiones, y el radiodifundir o televisar procedimientos judiciales, restan dignidad al tribunal, pueden distraer al testigo que esté prestando testimonio y pueden obstaculizar el logro de un juicio imparcial, por lo que ello no debe permitirse. Podrá, no obstante, permitirse la toma de fotografías o películas en ocasiones estrictamente ceremoniales....

judiciales le resta dignidad al tribunal, y puede obstaculizar el logro de un juicio imparcial.

De otra parte, el Canon XXI[18] persigue evitar que un magistrado utilice el poder y prestigio de su cargo para fomentar el éxito de negocios privados o para beneficio personal. Véase In re Marrero Torres, 113 D.P.R. 113, 115 (1982). Finalmente, el Canon XXVI[19] establece que los Cánones de Ética Judicial son normas mínimas de conducta

---

[18] **Canon XXI**

El Juez o la Jueza no debe utilizar su poder o el prestigio de su cargo para fomentar el éxito de negocios privados o para su beneficio personal. Tampoco debe tener relaciones de negocios que en el curso normal de acontecimientos razonablemente previsibles puedan poner sus intereses personales en conflicto con el cumplimiento de sus deberes. La participación de cualquier Juez o Jueza en negocios privados que no aparejen tales conflictos de intereses debe realizarse con la mayor cautela y prudencia a fin de evitar malas impresiones o la apariencia de conducta impropia. El Juez o la Jueza debe evitar particularmente dar base para la sospecha razonable de que pueda estar utilizando las prerrogativas o influencias de su cargo para su beneficio personal o el de otras personas.

El Juez o la Jueza no debe realizar gestión alguna ni permitir el uso de su nombre para recolectar fondos, no importa el propósito o destino de éstos. Dicha prohibición incluye solicitar donativos o aportaciones de personas o entidades para el Colegio de Abogados de Puerto Rico o para organizaciones cívicas, benéficas, profesionales o de cualquier otra índole.

[19] **Canon XXVI**

Los anteriores cánones de ética judicial son normas mínimas de comportamiento que todo Juez y toda Jueza debe observar fielmente, tanto en su letra como en su espíritu, por ser consustanciales con el cargo judicial. Estos cánones no excluyen otras normas de conducta que también obligan al Juez y a la Jueza, que están establecidas por ley o que son inherentes al honor tradicional de la judicatura.

que no excluyen otras establecidas por ley o que son inherentes a la judicatura.

A base de este marco jurídico, resolvemos.

VI

En ocasiones anteriores, hemos expresado que este Tribunal no habrá de alterar las determinaciones de hechos de la Comisión de Disciplina de Jueces, salvo en aquellos casos donde se demuestre parcialidad, prejuicio o error manifiesto. *In re Suaréz Marchán*, *supra*; *In re Maldonado Torres*, res. el 20 de diciembre de 2000, 151 D.P.R.____ (2000), 2000 T.S.P.R. 90, 2000 J.T.S. 97; *In re Moreira Avilés*, 147 D.P.R. 78, 86 (1998). En este caso, tras examinar detenidamente el Informe rendido por la referida Comisión, y la prueba que obra en el expediente, resolvemos que no existe razón para intervenir con las determinaciones fácticas de dicho cuerpo.

A base de los hechos probados, concluimos que la querellada violó los Cánones de Ética Judicial imputados, con excepción del Canon XVIII. Este canon, aunque habla de la solemnidad de los procedimientos judiciales, se refiere primordialmente al respeto al tribunal en el contexto de la toma de fotografías, películas, grabaciones o reproducciones durante el proceso judicial. La OAT imputó a la querellada el haber violado este canon en el caso AD-2001-5, el cual trata sobre los incidentes relacionados con la Lcda. Luna Padilla, a saber: la vista

ocular *ex parte*, la conferencia con los fiscales en ausencia de la abogada y la imposición inadecuada de un desacato. Habida cuenta de que el Canon XVIII es inaplicable a la conducta imputada, ya que los hechos en controversia no envuelven la toma de fotografías y grabaciones durante el proceso, resolvemos que la Lcda. Scherrer no incurrió en violación al mismo.

Ahora bien, concluimos que las actuaciones de la querellada en ese caso (AD-2001-5), analizadas de manera conjunta, revelan una conducta conflictiva con los Cánones I, II, XVI, XVII y XXVI. Primeramente, la querellada se dirigió a la Lcda. Luna Padilla— en corte abierta y con total falta de serenidad y temperamento— para expresarle en varias ocasiones que le había mentido al tribunal. Además del tono y actitud desplegados por la Lcda. Scherrer al hacer estas expresiones, hay que tomar en cuenta el hecho de que éstas afirmaciones tenían como base unos hallazgos *ex parte*— producto de la inspección ocular que realizara el día anterior— y que no quiso recibir la prueba fotográfica ni escuchar los argumentos que le ofreció la abogada. Así pues, la escabrosa conducta de la querellada no solo humilló innecesariamente a la Lcda. Luna Padilla en corte abierta, sino que también evitó que pudiese colocarse en posición de rectificar sus decisiones.

Como si fuera poco, tras ordenar un receso en el caso, la querellada se reunió a solas con los fiscales en

violación a lo establecido por el Cánon XV de Ética Judicial, *supra*. A su vez, ***lo discutido en esa reunión desencadenó en la imposición de un desacato sumario en contra de la Lcda. Luna Padilla*, *que se fundamentó en unas alegadas expresiones que no fueron escuchadas personalmente por la querellada*, *y que respondían a la percepción que tuvo la parte adversa de lo murmurado por la referida abogada***.

Las actuaciones de la querellada en este caso manifiestan falta de prudencia, serenidad e imparcialidad, además de falta de consideración y respeto hacia la abogada que ante ella compareció. Dicho proceder afectó la integridad de su ministerio y laceró la dignidad y respeto debido al tribunal. Aprovechamos para recordar que, como expresáramos en *In re Cruz Aponte*, *supra*, a la pág. 21, "los jueces y juezas deben ignorar las ofensas personales de las cuales sean objeto[;] en tales circunstancias, su actuación serena, firme y sin prejuicios logrará vindicar más efectivamente su autoridad que la condena directa al ofensor."

Por otro lado, el caso AD-2001-7 ilustra una segunda querella que tiene como base el uso indebido del desacato. Ahora bien, como en el caso AD-2001-5, concluimos que el mal uso de dicha figura jurídica trascendió el mero error de derecho. Como regla general, el mero error de hecho o de derecho no puede ser motivo para que se discipline a un juez. Solamente, en

circunstancias extremas, la comisión de un error de tal naturaleza podría considerarse una violación al Código de Ética Judicial, que amerite la imposición de sanciones disciplinarias por parte de este Tribunal. ***Para que se justifique la aplicación de sanciones en estos casos se tiene que demostrar que el error cometido constituyó un abuso intencional de discreción judicial, o uno que por su magnitud refleje conducta impropia o favoritismo hacia algún litigante o su abogado***. *In re Díaz García*, res. el 11 de febrero de 2003, 158 D.P.R. ___ (2003), 2003 T.S.P.R. 13, a la pág. 13, 2003 J.T.S 15.

En este caso, el Lcdo. Julio Gil de Lamadrid fue privado de su libertad por un tiempo, y fue conducido fuera de sala a través de los elevadores que se utilizan para trasladar a los confinados. ***Ante la accidentada sucesión de eventos y obstinación de la querellada, el referido abogado se vio obligado a representar a una persona que no era su cliente.*** Aunque la Lcda. Scherrer tuvo varias oportunidades para reconsiderar su errado curso de acción, ***toda vez que el Lcdo Gil de Lamadrid ofreció infructuosamente presentar prueba documental y testifical, su actitud destemplada, irreflexiva e imprudente impidió que ello ocurriese***. Como acertadamente expresara la Comisión de Disciplina de Jueces, la actitud de la querellada "reflej[ó] una imparcialidad fundamental de tal magnitud que se

convirtió en una violación a los Cánones de Ética Judicial."[20]

La conducta desplegada por la ex juez Scherrer afectó la confianza e integridad que debe prevalecer en el proceso judicial. Asimismo, reflejó falta de prudencia, serenidad e imparcialidad en sus funciones ministeriales, por lo que violó los Cánones I, II, XVI, XVII y XXVI de Ética Judicial.

Por su imposición del Lcdo. Gil de Lamadrid como abogado del acusado González Calderón, la OAT también le imputó a la Lcda. Scherrer violar el *Reglamento para la Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal, supra.* Dicho Reglamento, que se promulgó en virtud de nuestro poder inherente para reglamentar la profesión legal en Puerto Rico,[21] ***aplica a todo procedimiento de naturaleza penal incoado en la jurisdicción del E.L.A., al cual sea aplicable el derecho constitucional a asistencia de abogado***. *Véase* Regla 2 de dicho Reglamento, 4 L.P.R.A. Ap. XXVIII, R.2. El proceso de selección de abogados de oficio que instituye este cuerpo legal se activa cuando la persona sometida a un procedimiento de naturaleza

---

[20] Véase Informe de la Comisión de Disciplina de Jueces, a la pág. 30.

[21] *Véase además Ramos Acevedo v. Tribunal Superior*, 133 D.P.R. 599 (1993).

penal[22] puede demostrar que: 1) es indigente, según lo establece el propio Reglamento; 2) no puede ser representada por la SAL, por la Corporación de Servicios Legales de Puerto Rico, Inc., u otra entidad análoga competente; y 3) no ha renunciado expresamente a su derecho a asistencia de abogado.[23] *Id.* Una vez concurren estas circunstancias, el Reglamento provee para que el Juez que preside una causa criminal aplicable seleccione a un abogado(a) de oficio entre aquellos disponibles en una lista que será confeccionada a esos fines por la Delegación del Colegio de Abogados y el Juez Administrador de la Región Judicial correspondiente.

---

[22] Según el Reglamento, 4 L.P.R.A., Ap. XXVIII, R. 3(a), un "procedimiento de naturaleza penal" se define como:

> [t]odo procedimiento investigativo, judicial o cuasijudicial celebrado en la jurisdicción del Estado Libre Asociado de Puerto Rico al que sea aplicable el derecho constitucional a asistencia de abogado o abogada y que como resultado del mismo una persona natural pueda estar sujeta a:
>
> 1) Restricción de libertad mediante arresto.
> 2) Una o varias de las penas que establece la sec. 3201 del Título 33.
> 3) Una o varias de las medidas dispositivas provistas por la Ley de Menores de Puerto Rico, secs. 2201 et seq. del Título 34.
> 4) Modificación o revocación de medidas de desvío o alternas a la reclusión que conlleve la pérdida o restricción de la libertad.

[23] Sobre la normativa relativa al requisito (3)—renuncia a derecho a asistencia de abogado—*véase Pueblo v. Cruzado Laureano*, res. el 24 de mayo de 2004, 161 D.P.R. ___ (2004), 2004 T.S.P.R. 79.

*Id.*, Rs. 4-12. La selección del abogado se hará en el orden correspondiente, según el sorteo que para esos fines se efectúe. *Id.*, R. 6.

En el caso de marras, la querellada obligó al Lcdo. Gil de Lamadrid a representar gratuitamente al señor González Calderón sin observar el proceso dispuesto en el *Reglamento de para la Asignación de Abogados o Abogadas de Oficio en Procedimiento de Naturaleza Penal*, *supra*. En primer lugar, no surge de autos que la querellada haya hecho una determinación de indigencia como lo exigen las Reglas 2 y 22[24] del Reglamento. Además, en caso de que se haya presumido que el acusado era indigente conforme a la Regla 15 del Reglamento, no hay prueba de que se haya constatado que éste no podía ser representado por la SAL u otra organización análoga, como lo dispone la Regla 2 del Reglamento.

Dentro de este contexto, resolvemos que la designación forzosa del Lcdo. Gil de Lamadrid fue en violación al *Reglamento para la Asignación de Abogados o Abogadas de Oficio en Procedimientos de Naturaleza Penal*, *supra*.

Finalmente, el caso AD-2001-6 gira en torno a unas acciones privadas de la Lcda. Scherrer que, no obstante,

---

[24] **Regla 22.  Selección y asignación de abogado o abogada**

*Luego de que se haya determinado que la persona es indigente*, el tribunal le asignará como abogado o abogada de oficio a aquel o aquella cuyo nombre esté en turno en la lista correspondiente...(énfasis suplido).

tienen unas implicaciones éticas. Según detalláramos anteriormente, la querellada hizo un uso indebido de su poder como juez durante el proceso de negociar la compra de un bien inmueble, al identificarse como "presidenta de los jueces" y al afirmar "que podría conseguir otros jueces compradores". Gracias a estas representaciones, la querellada logró una rebaja de alrededor de $15,000.00 en el precio del inmueble que adquirió en el complejo Costa Mar Apartments. Asimismo, es un hecho probado que la querellada ocupó durante varios meses el inmueble que había opcionado, sin derecho a ello y beneficiándose ilegalmente del suministro de energía eléctrica y agua.

Las actuaciones relatadas demuestran que la Lcda. Scherrer utilizó su poder y prestigio como juez para beneficio personal y, en ocasiones, en contravención de la ley. Por tanto, resolvemos que violó el Canon XXI de Ética Judicial, *supra*, y los principios enunciados en el Canon I del mismo cuerpo legal, *supra*.

La OAT también le imputó a la querellada violaciones a las Reglas de Procedimiento para Acciones Disciplinarias y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones, al alegadamente discutir de forma pública los eventos que dieron base a las querellas que hoy dilucidamos. Sin embargo, la OAT no presentó prueba sobre ese extremo, razón por la cual la Comisión de Disciplina de Jueces no atendió tal

imputación. No estando en posición para adjudicar responsabilidad sobre ese particular, se desestima el tercer cargo de la querella AD-2001-6.

V

A base de lo anteriormente expuesto, resolvemos que los casos que nos ocupan, vistos en conjunto, reflejan un patrón de conducta reprobable y ajeno a lo que la ciudadanía espera de un juez. Más aún, las actuaciones de la Lcda. Scherrer en el caso AD-2001-6, tienen unas implicaciones que trascienden sus responsabilidades como juez, y se proyectan en su carácter personal y en su vida profesional como abogada. Estos hechos, en sus particulares manifestaciones, ilustran palmariamente que la querellada violó los Cánones I, II, XV, XVI, XVII, XXI y XXVI de Ética Judicial.

Por último, mediante moción de 31 de marzo de 2003, la OAT argumentó que la conducta de la Lcda. Scherrer violentó el Canon 38 de Ética Profesional[25] en los tres

---

[25] **Canon 38. Preservación del honor y dignidad de la profesión**

El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. En su conducta como funcionario del tribunal, deberá interesarse en hacer su propia y cabal aportación hacia la consecución de una mejor administración de la justicia. Tal participación conlleva necesariamente asumir posiciones que puedan resultarle personalmente desagradables pero que redundan en beneficio de la profesión, tales como: denunciar valientemente, ante el foro correspondiente, todo tipo de conducta corrupta y deshonrosa de cualquier colega o
continúa...

casos, y los Cánones 15[26] y 29[27] en los casos AD-2001-5 y

AD-2001-6.  Si bien encontramos que las violaciones a los

_____

... [25] continuación

funcionario judicial; aceptar sin vacilaciones cualquier reclamación contra un compañero de profesión que haya perjudicado los intereses de un cliente; poner en conocimiento de las autoridades apropiadas todo acto delictivo o de perjurio que ante él se cometiera; velar y luchar contra la admisión al ejercicio de la profesión de personas que no reúnan las condiciones morales y éticas, así como de preparación académica, que nuestra profesión presupone. Todo abogado debe estar convencido de las condiciones idóneas morales y éticas de un aspirante al ejercicio de la profesión antes de recomendarle para su admisión al foro.

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe conducirse en forma digna y honorable. En observancia de tal conducta, el abogado debe abstenerse en absoluto de aconsejar y asesorar a sus clientes en otra forma que no sea el fiel cumplimiento de la ley y el respeto al poder judicial y a los organismos administrativos. De igual modo, no debe permitir a sus clientes, sin importar su poder o influencia, llevar a cabo actos que tiendan a influenciar indebidamente a personas que ejercen cargos públicos o puestos privados de confianza. Lo antes indicado no impide, naturalmente, que un abogado dé a sus clientes su opinión informada y honesta sobre la interpretación o validez de una ley, orden o reglamento, que no ha sido, a su vez, interpretado o clarificado en sus disposiciones por un tribunal competente.

Todo abogado que abandone el servicio público debe rechazar cualquier empleo o representación legal en aquellos casos particulares en relación con los cuales haya emitido juicio profesional como funcionario público.

[26] **Canon 15. Conducta hacia testigos y litigantes**

Un abogado debe tratar a los testigos y litigantes adversarios con respeto y consideración. No debe actuar inspirado por la animosidad ni por los prejuicios de su cliente ni debe permitir que éste dirija el caso ni que se convierta en el dueño de la conciencia del abogado.

continúa...

Cánones 15 y 29 no se cometieron— por ser éstos dirigidos a la conducta del abogado litigante en corte, y no a los jueces— sí resolvemos que la querellada infringió lo preceptuado por el Canon 38—especialmente en el caso AD-2001-6 —al comportarse de manera ajena a la dignidad y honorabilidad que dicho canon exige **_de todo abogado, tanto en su práctica profesional como en su vida privada._**

Los hechos que encontramos probados en las tres controversias que hoy atendemos usualmente serían suficientes para destituir a un juez de su puesto. La

_____

... [26] continuación

Será impropio utilizar los procedimientos legales en forma irrazonable o con el fin de hostigar la parte contraria.

Todo abogado debe abstenerse de brindar, ofrecer u otorgar beneficios a un testigo para inducirle a declarar falsamente. Será impropio pagar u ofrecer el pago de honorarios contingentes a cualquier testigo. El abogado debe velar por el cumplimiento de estas normas por cualquier otra persona inclusive su cliente.

[27] **Canon 29. Cuestiones personales entre abogados**

Los clientes, no los abogados, son los litigantes. Cualquier rencor que exista entre los clientes no debe afectar la conducta de los abogados entre sí ni las relaciones hacia el litigante contrario. Debe evitarse escrupulosamente toda cuestión personal entre los abogados. En el trascurso de un juicio es impropio aludir a la historia personal o peculiaridades individuales o idiosincrasias del abogado adversario. Los coloquios entre abogados que causan dilaciones y provocan disputas deben también evitarse.

Será altamente impropio de un abogado hacer imputaciones falsas que afecten la reputación y el buen nombre de un compañero. Cuando existan fundados motivos de quejas graves contra colegas, es el deber del abogado someter sus cargos a las autoridades competentes, debiendo utilizar para ellos los medios propios que dispone la ley.

Lcda. Scherrer ya renunció a su cargo. Ordenamos su suspensión del ejercicio de la abogacía por el término de seis (6) meses.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

| | | |
|---|---|---|
| Heidi Scherrer Caillet-Bois | AD-2001-5 | Conducta |
| Jueza Superior | AD-2001-6 | Profesional |
| Tribunal de Primera Instancia | AD-2001-7 | |
| Sala Superior de Bayamón | | |

SENTENCIA

San Juan, Puerto Rico, a 21 de septiembre de 2004.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede y que se hace formar parte de esta sentencia, se ordena la suspensión de la Lic. Heidi Scherrer Caillet-Bois del ejercicio de la abogacía por el término de seis (6) meses.

Se le impone a la Lic. Heidi Scherrer Caillet-Bois el deber de notificar a todos sus clientes de su presente inhabilidad de seguir representándolos, de devolverle cualesquiera honorarios recibidos por trabajos no realizados, e informarle oportunamente de su suspensión a los distintos foros judiciales y administrativos del país. Además, deberá certificarnos dentro de un término de treinta (30) días, contado a partir de la notificación de esta sentencia, el cumplimiento con estos deberes, notificando también al Procurador General.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez está inhibido.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo